SO ORDERED.

SIGNED this 16th day of June, 2014.





Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION ONLY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAUL A. GARCIA, | ) | Case No. 12-10393 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEVEN L. SPETH, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 14-5039 |
| | ) | |
| WILLIAM B. GARCIA Successor | ) | |
| Trustee of the Revocable Inter Vivos | ) | |
| Trustee of Lenore Garcia, u/a/d | ) | |
| November 18, 2008 | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER ON DEFENDANT'S MOTION TO DISMISS, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

Paul Garcia filed his chapter 13 petition on February 28, 2012 and his case was

1

converted to chapter 7 on February 3, 2014. Plaintiff Steven L. Speth was appointed chapter 7 trustee. Speth filed an amended complaint pursuant to 11 U.S.C. § 547 alleging that Paul Garcia transferred $35,000 to defendant William B. Garcia, successor trustee of the Lenore Garcia Inter Vivos Trust (the "Trust") during the "insider preference period" either with the intention of hindering, delaying, or defrauding his creditors or in exchange for less than reasonably equivalent value. The Trust moved to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

*The Complaint*

Speth's sparsely pleaded complaint merely asserts that Paul transferred $35,000 to the Trust within one year before he filed his bankruptcy case and that he did so either with fraudulent intent or in exchange for less than reasonably equivalent value.[1] The Trust's motion seeks either a dismissal of the complaint for failure to state a claim under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6) or for summary judgment under Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56.

We first must ascertain what cause of action Speth is attempting to plead here. In the original complaint, he alleged a claim to avoid and recover a fraudulent transfer under § 548. The next day Speth filed his amended complaint. The amended complaint differs from the original only in that it states a claim to avoid and preserve

---

[1] The chapter 7 trustee, Steven L. Speth, will be referred to as Speth even though he proceeds in his trust capacity. Speth's claim lies against William Garcia in his capacity as trustee of the Lenore Garcia Trust. To avoid confusion between the two trustees, the defendant will be referred to as "the Trust." Attorney Timothy J. King appeared on behalf of Speth. Attorney Elizabeth Carson appeared on behalf of the Trust.

2

a preference under § 547 instead of a fraudulent transfer under § 548.[2] The factual and legal allegations remained the same: the debtor transferred $35,000 during the insider preference period to defendant, the transfer was made with intent to hinder, delay or defraud creditors [actual fraud] or the transfer was for less than reasonably equivalent value and was either made at a time that the debtor was insolvent or the debtor became insolvent as a result of the transfer [constructive fraud].[3]

While the complaint's words hint at a §548 fraudulent transfer, Speth's reference to § 547 in the amended complaint while referencing the insider preference period suggests that he may instead be pursuing a preference claim. Speth does not allege a date certain that the transfer occurred, but alleges it was made during the insider preference period within one year before the filing of the bankruptcy petition, again pointing to an allegation of preference.[4] The Court's doubts about Speth's intention to assert a preference claim are dispelled by his response brief which addresses only that:

> Plaintiff's Complaint is based on a good faith belief the following occurred. On July 22, 2011, debtor Paul J. Garcia and his brother, Alex Garcia jointly paid $35,000.00 to the Lenore Garcia Inter Vivos Trust. All beneficiaries of the trust are the debtor and his brothers. Debtor filed for protection under Chapter 13 on February 28, 2012. Thus, the transfer occurred within the one year reach back preference period for an "insider" under 11 U.S.C. § 547. Plaintiff asserts the trust is an "insider" because of the family relationships of the trust

---

[2] *Cf.* Adv. Dkt. 1 and 2.
[3] *See* § 548(a)(1)(A) (actual fraud) and (a)(1)(B)(i) and (ii)(I) (constructive fraud).
[4] Section 548(a)(1) reaches transfers made during the 2-year period before the date of the petition, while the insider preference period is up to 1 year before the date of the petition under § 547(b)(4)(B). Thus, a transfer that falls within the insider preference period will also fall within the 2-year period for fraudulent transfers.

3

beneficiaries and ***thus, the transfer is a preference***.[5]

Since the parties both focus on the Trust's insider status which is mostly relevant to calculating the reach back period for the preference claim, the Court will first address whether the amended complaint states a claim to avoid a preference under § 547, before turning to the fraudulent transfer claims.

### *The Preference Claim, § 547*

A preference is (1) a transfer of an interest of the debtor or the estate in property; (2) to or for the benefit of a creditor; (3) made for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) made while the debtor is insolvent; (5) made within 90 days preceding the filing of the bankruptcy petition; and (6) that allows the creditor to receive more than the creditor would otherwise have received in a chapter 7 liquidation.[6] A transfer to an insider made less than one year but more than 90 days before the petition date is also a preference.[7] Unlike a fraudulent transfer, the debtor's intent or state of mind in making the transfer is immaterial to determining whether the transferee has received a preference.[8]

All Speth pleads is that the debtor transferred "a payment amount of $35,000" to the Trust during the "'insider' preference period," while debtor was insolvent and

---

[5] Adv. Dkt. 10, p. 2. Emphasis added.
[6] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).
[7] Section 547(b)(4)(B); *Rupp v. United Security Bank (In re Kunz),* 489 F.3d 1072, 1076 (10th Cir. 2007) (debtor's title of director emeritus of bank did not make bank a per se insider of debtor for preference purposes); *In re Hertzler Halstead Hospital,* 334 B.R. 276, 286-87 (Bankr. D. Kan. 2005) (one-year look-back period applies to preference analysis to an insider).
[8] *In re Antweil,* 931 F. 2d 689 (10th Cir. 1991), *aff'd* 503 U.S. 393 (1992).

4

for the benefit of the Trust. He does not allege that the Trust is a creditor of the debtor or that debtor owed an antecedent debt to the Trust before the transfer. Nor does he affirmatively allege that the Trust is an insider; that allegation can be inferred from the averment that the transfer occurred during the insider preference period. Absent these critical allegations, the complaint by itself does not state a preference claim.

But the Trust has included facts and exhibits outside the amended complaint in its motion to dismiss, giving the Court liberty to address its motion as one for summary judgment.[9] Summary judgment is appropriate when the uncontroverted facts show that there remain no genuine issues of material fact in the case and that the movant is entitled to judgment as a matter of law. The Trust attached the Revocable Inter Vivos Trust of Lenore Garcia as Exhibit A and a file-stamped copy of a state court journal entry of judgment entered July 15, 2011 in a case brought by the Trust against debtor as Exhibit B. While the Trust should have directly cited to the applicable provisions of the trust document and the journal entry of judgment to support each of its contentions of fact, Exhibits A and B generally support them.[10] Speth does not dispute the authenticity of either the trust document or the state court judgment. Nor does he dispute the accuracy of the Trust's separately numbered facts in his response brief, as he had the opportunity to do.[11] He could have responded to each of the Trust's statements of fact by properly disputing them, or he could have

---

[9] Fed. R. Civ. P. 12(d).
[10] Adv. Dkt. 8, pp. 1-11. *See* Fed. R. Civ. P. 56(c)(1) and (3); D. Kan. L.B.R. 7056.1(a).
[11] Adv. Dkt. 10.

5

submitted his own additional statements of uncontroverted fact.[12] Because he didn't, the Trust's statements of material fact are deemed admitted.[13]

Ironically, the facts necessary to the preference claim that Speth failed to plead in his amended complaint are supplied by the Trust in its uncontroverted statement of facts. In her trust, Lenore Garcia granted Paul and Alex an option to buy her Salina restaurant for $200,000 payable in 10 annual installments of $20,000. The Trust document, Exhibit A, supports that statement and sets forth the terms and manner of exercising the purchase option. The Trust also contends that Paul and Alex only made one partial payment after they exercised the option, that they missed the second annual payment entirely, and that the trust obtained a judgment against them for $35,000 in Sedgwick County District Court in July of 2011.[14] Those facts are supported by the Journal Entry, Exhibit B, where the state court found that Paul and Alex breached the contract for the purchase of the restaurant and entered judgment against them. Speth admits that the debtor transferred $35,000 to the Trust on July 22, 2011, well within the insider preference period.[15] Exhibit B therefore establishes that the Trust became a judgment creditor of debtor in July 2011 and that this antecedent debt existed prior to debtor's bankruptcy filing on February 28, 2012 and the $35,000 transfer at issue. As the state court judge concluded in the Journal Entry, the Trust's judgment against debtor arose from a prepetition breach of contract for

---

[12] D. Kan. L.B.R. 7056.1(b).
[13] D. Kan. L.B.R. 7056.1(a).
[14] The Court notes that the principal amount of the judgment is $30,000, not $35,000. *See* Ex. B attached to Adv. Dkt. 8.
[15] See Adv. Dkt. 10, p. 2

**6**

Case 14-05039    Doc# 13    Filed 06/16/14    Page 6 of 12

nonpayment of the purchase option granted to and exercised by debtor under the Trust Document.[16]

The only dispute is whether the Trust is an insider. Because all of the other elements of §547(b) appear to be met, the $35,000 transfer in July of 2011 – more than 90 days but less than 1 year before debtor filed his bankruptcy petition – qualifies as a preference only if the Trust qualifies as an insider.[17] The Trust contends that it is not an insider because it does not meet the definition of a statutory insider under 11 U.S.C. § 101(31)(A). Even if it is correct, the Trust may qualify as a non-statutory insider.[18] But that determination depends on the specific facts regarding the debtor's relationship with the Trust, a matter still in controversy at the summary judgment stage.[19] Accordingly, the Court concludes that the uncontroverted facts presented here may establish an avoidable preference claim if the Trust is an insider, but the disputed issue of insider status cannot be determined on this record.[20] The Trust's motion for summary judgment as to the preference claim under § 547(b) is therefore DENIED.

---

[16] This Court also has familiarity with Lenore's Trust and the purchase option as it conducted a day-long trial challenging the dischargeability of Paul's debt to the trust before granting Paul's Rule 52(c) motion for judgment at the close of the trust's evidence. This trial took place before Paul converted his case to chapter 7. *See William B. Garcia, as successor trustee of the Revocable Inter Vivos Trust of Lenore Garcia, u/a/d November 18, 2008 v. Paul A. Garcia, et al.,* Adv. No. 12-5126, Dkt. 114 (Bankr. D. Kan., Mar. 12, 2014).
[17] *See* § 547(b)(4)(B).
[18] *See In re Kunz,* 489 F.3d 1072, 1078-79 (describing the two categories of insiders); *In re U.S. Medical, Inc.,* 531 F.3d 1272, 1278 (10th Cir. 2008) (Non-statutory insider is one where the relationship between the parties is sufficiently close and transaction is not conducted at arm's length.).
[19] *In re Kunz, supra* at 1079 (refusing to determine whether Bank was a non-statutory insider of the debtor on summary judgment).
[20] Because the Trust has not yet filed its answer to the complaint, there may be other defenses that may be asserted to the preference claim and the Court makes no determination today regarding the viability of any such defenses.

7

*The Fraudulent Transfer Claims, § 548(a)(1)(A) and (B)(i) and(ii)(I)*

The Trust's contention for dismissal or summary judgment boils down to this: Paul's $35,000 payment to the Trust was in payment of a judgment entered against Paul in state court for breach of contract on the purchase option he exercised with Alex for Lenore's restaurant. Those facts standing alone do not dictate a conclusion that the transfer was made with intent to hinder, delay or defraud Paul's creditors or that he received less than reasonably equivalent value [REV] for the payment. Nor did Speth plead factual circumstances from which either fraudulent intent or the lack of REV may be inferred. Under these circumstances, the Trust contends it is entitled to dismissal for failure to state a claim or for judgment as a matter of law on the uncontroverted facts. The Court first examines the actual fraud component of § 548 – subsection (a)(1)(A) and assesses whether Speth's amended complaint states a plausible claim for relief on its face under *Twombly's* and *Iqbal's* facial plausibility standard.[21]

The sufficiency of pleading a fraud-based claim is especially difficult to gauge where Fed. R. Civ. P. 8 and 9 seem to collide.[22] The Tenth Circuit discussed the *Twombly* standard in *Robbins v. Oklahoma*:

> [Previously], [u]nder this construction of Rule 8(a), a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was apparent from the face of the pleadings – that is, a complaint was immune from dismissal if it left

---

[21] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).
[22] Rule 8, made applicable in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7008(a), stresses notice pleading, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 9 (made applicable by Fed. R. Bankr. P. 7009), on the other hand, requires that fraud be pled with particularity: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

8

open the possibility that a fact not alleged in the complaint could render the complaint sufficient. . . .

Under this revised standard [*Twombly*], as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider:*

> The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* . . .

As best we understand it, however, the opinion seeks to find a middle ground between "heightened fact pleading," which is expressly rejected, . . . and allowing complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," which the Court stated "will not do." [citations omitted.].[23]

Looking at Speth's amended complaint in light of this Tenth Circuit guidance, and keeping in mind the confusion stemming from Speth's stating that his claim is asserted under § 547, the sum total of the substantive allegations of actual fraud are that:

> 7. During the "insider" preference period prior to commencement of this case, the Debtor transferred to [the Trust], a payment amount of $35,000.00 (hereinafter the "Transfer").
>
> 8. The Transfer was made with the actual intent to hinder, delay or defraud the Debtor's existing creditors.
>
> * * *
>
> 10. The Debtor was insolvent when the Transfer was made, or became

---

[23] 419 F.3d 1242, 1246-47 (10th Cir. 2008).

insolvent as a result of the Transfer.[24]

There are no *factual circumstances* described from which it may be inferred that the transfer was fraudulently made. We only know the transfer occurred between 90 days and 1 year before the filing of debtor's bankruptcy, not when, where, or how the transfer occurred. He identifies the transfer as a "payment" but does not identify for what the payment was made. The factual allegations are so sketchy and incomplete that the amended complaint does not give fair notice of the fraudulent intent necessary to support the fraudulent transfer claim. The Court would expect to see factual allegations in the complaint that show one or more of the badges of fraud. They include: (1) whether transfer was to an insider; (2) whether transfer retained possession or control of property after transfer; (3) concealment of the transfer; (4) pending or threatened litigation against debtor at time of transfer; (5) transfer of substantially all of debtor's assets; (6) absconding by debtor; (7) removal or concealment of assets; (8) reasonably equivalent value in exchange for transfer; (9) debtor's insolvency at time of the transfer; and (10) proximity in time to incurring substantial debt.[25]

At best, Speth alleged in a conclusory fashion that debtor was insolvent at the time of the transfer and did not receive reasonably equivalent value in return. There was no specific allegation that the Trust was an insider of the debtor or explain

---

[24] Adv. Dkt. 2-1.
[25] *See Zubrod v. Kelsey (In re Kelsey),* 270 B.R. 776, 782 (10th Cir. BAP 2001) (In deciding whether transfer of bank account funds to wife was made with actual intent to hinder, delay or defraud creditors, bankruptcy court may consider circumstantial evidence establishing badges of fraud); *In re Hertzler Halstead Hosp.,* 334 B.R. 276, 292 (Bankr. D. Kan. 2005) (because the requisite fraudulent intent is rarely admitted by a debtor, courts look to circumstantial evidence establishing badges of fraud).

**10**

debtor's relationship to the Trust. At its best, the amended complaint pleads "labels and conclusions" or "formulaic recitation of the elements of a cause of action" which *Twombly* says is not good enough.[26] The Court concludes that these allegations " . . . are so general that they encompass a wide swath of conduct, much of it innocent, [that] the plaintiffs 'have not nudged their claims across the line from conceivable to plausible."[27] Speth's purported claim for avoidance of an actually fraudulent transfer does not state a claim upon which relief may be granted and must be DISMISSED.[28]

Section 548(a)(1)(B) empowers the trustee to avoid constructively fraudulent transfers. Here, Speth invokes subsection (a)(1)(B)(i) and (ii) – debtor received less than REV in exchange for the payment and was insolvent at the time of the transfer or became insolvent as a result of the transfer. Like the actually fraudulent transfer allegations, Speth merely recites the language of § 548(a)(1)(B) and does not allege factual circumstances. But the Trust's additional statement of material facts places the transfer in context. Even assuming the § 548(a)(1)(B) claim is sufficiently pled, the debtor cannot avoid summary judgment on this claim. The uncontroverted facts establish that the $35,000 transfer was in payment of the judgment granted by the

---

[26] 550 U.S. at 555.
[27] *Robbins v. Oklahoma,* 419 F. 3d 1242, 1247. *See In re Crescent Oil Co., Inc.,* 2011 WL 3878377 at *1 (Bankr. D. Kan. Aug. 31, 2011) (complaints for avoiding fraudulent transfers under § 548(a)(1)(A) have heightened pleading requirements under Rule 9 and must plead the circumstances of the alleged fraud to place the defendant on notice of the precise misconduct with which it is charged).
[28] Even if the Court treats the Trust's motion as one for summary judgment, that motion would also be granted. The additional statements of material fact that place the transfer in context – payment of a judgment granted in favor of the Trust for debtor's breach of contract – does not in any fashion implicate fraudulent misconduct by the debtor. It alleges a transfer of money to a creditor to satisfy a bona fide legal obligation -- payment of a judgment debt. There was an absence of anything in the record to show a genuine dispute of a material fact and the record is devoid of fraudulent conduct – an essential element of a fraudulent transfer claim under § 548(a)(1)(A). *See Butler v. Loomer (In re Loomer),* 222 B.R. 618, 623 (Bankr. D. Neb. 1998) (transfers that were simply payments on a bona fide preexisting loan negates any inference of fraudulent intent)

state court and owed by debtor to the Trust. Section 548(d)(2)(A) defines "value" to include the satisfaction of an antecedent debt. By paying the judgment, the debtor received a dollar for dollar reduction of his debt to the Trust and in this case satisfied the state court judgment. This constitutes reasonably equivalent value for the transfer.[29] Because debtor received REV in exchange for the transfer, it may not be avoided as constructively fraudulent. The Trust is entitled to summary judgment on this claim.

### *Orders*

The Trust's motion to dismiss or for summary judgment on the § 547 preference claim is DENIED. The Trust's motion to dismiss or for summary judgment on the § 548 fraudulent transfer claims (actually fraudulent and constructively fraudulent) is GRANTED. The Trust shall have 14 days to file its answer to the amended complaint and thereafter, a scheduling conference will be set in this matter.

###

---

[29] *See Jobin v. McKay (In re M&L Business Mach. Co., Inc.),* 84 F.3d 1330, 1342 (10th Cir. 1996) (debtor received reasonably equivalent value for payments where payments to investor reduced the investor's restitution claim); *In re Adam Aircraft Ind., Inc.,* 493 B.R. 834, 845-46 (Bankr. D. Colo. 2013) (payments to former company president that satisfied corporate debtor's monetary obligations under separation agreement were supported by reasonably equivalent value in form of dollar-for-dollar reduction of obligations and could not be avoided as constructively fraudulent); *In re Wiley,* 438 B.R. 331, 334 (Bankr. D. N.M. 2010) (debtor received reasonably equivalent value for loan payments to Farm Credit because his loan balance was reduced dollar-for-dollar).

**12**